# In the United States Court of Federal Claims

No. 11-339C
(Filed: October 21, 2013)

| | | |
|---|---|---|
| KATHERINE G. COOPER, | ) | |
| | ) | |
| Plaintiff, | ) | Abandoned Back Pay Claim Under 37 |
| | ) | U.S.C. § 204; Retroactive Disability |
| v. | ) | Retirement Pay Under 10 U.S.C. § |
| | ) | 1201; First Competent Board Rule; |
| THE UNITED STATES, | ) | Military Correction Board; |
| | ) | Constructive Service Doctrine; |
| Defendant. | ) | Dismissed For Lack Of Jurisdiction. |
| | ) | |
| | ) | |
| | ) | |

*Jason Ellis Perry*, Cheshire, CT, for plaintiff.

*Lauren S. Moore*, Civil Division, United States Department of Justice, Washington, DC, with whom were *Stuart F. Delery*, Assistant Attorney General, and *Jeanne E. Davidson*, Director, Commercial Litigation Branch, for defendant. *Major Nicole L. Fish*, United States Army Litigation Division, Fort Belvoir, VA, of counsel.

**O P I N I O N**

**FIRESTONE**, *Judge*.

In this case, Ms. Katherine G. Cooper ("Ms. Cooper" or "the plaintiff") alleges that she became disabled after having been injured in 2005 while serving on active duty, and that she is entitled to disability pay stemming from that injury. In this connection, she contends that the Army wrongfully (1) terminated her 2006 Medical Evaluation

Board ("MEB"),[1] (2) failed to provide her with mandatory separation counseling, and (3) did not convene a new MEB prior to separating her from active duty in 2007.

The plaintiff's request for relief has evolved considerably over the course of this litigation.[2]  Ms. Cooper originally focused her action on a claim for back pay under the Military Pay Act, 37 U.S.C. § 204 (2012), premised on her allegedly unlawful and involuntary discharge from active duty.  The complaint, however, appeared to be making a claim for disability pay based on the injury she sustained while on active duty.  In response to questions at oral argument, the plaintiff expressly abandoned her back pay claim, and instead asserted that she is in fact owed disability payments under 10 U.S.C. § 1201 (2012)[3] for the period between September 7, 2007 (when she was separated from active duty) and January 3, 2013 (when she was medically retired from the United States Army Reserves ("USAR") with a 50% disability rating).  This shift by the plaintiff appears to be related to two simultaneous but independent Army adjudications concerning Ms. Cooper:  (1) the August 7, 2012 decision of the Army Board for the

---

[1] MEBs "are convened to document a Soldier's medical status and duty limitations insofar as duty is affected by the Soldier's status."  Army Regulation ("Army Reg.") 635-40 ¶ 4-10.  If an MEB finds that a soldier does not meet Army medical retention standards, the MEB generally must refer the soldier to a Physical Evaluation Board ("PEB") for disability processing.  See id. at App. C ¶ 6.  The PEB then decides whether the soldier is physically fit or unfit for duty.  Id. at ¶ 7.  If unfit, the PEB determines whether the soldier's disability entitles him or her to disability retirement or severance pay.  Id.  The PEB is not bound to the findings or recommendations of the MEB.  Id. at ¶ 6.

[2] Ms. Cooper's shifting claims are discussed in Section I.B, infra.

[3] Section 1201 provides that "[u]pon a determination by the Secretary concerned that a member . . . is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability . . . the Secretary may retire the member . . . with retired pay . . . ."

Correction of Military Records ("ABCMR"), which determined, following a remand by this court, that Ms. Cooper's separation from active duty was voluntary and proper; and (2) the August 8, 2012 decision of an Army Informal PEB, which recommended that Ms. Cooper be discharged from the USAR due to physical disability and rated as 50% disabled.[4]

Presently before the court are the United States' ("the defendant" or "the government") motions to dismiss for lack of jurisdiction and for failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), or in the alternative, for judgment on the administrative record pursuant to RCFC 52.1.  The plaintiff has cross-moved for judgment on the administrative record.

The court concludes for the reasons that follow that it lacks jurisdiction to hear the plaintiff's claim for disability pay under 10 U.S.C. § 1201 because no military board has, as of yet, denied or refused to consider the plaintiff's claim for disability pay dating from her discharge in 2007.  Therefore, the government's 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction is **GRANTED**, and the government's RCFC 12(b)(6) motion to dismiss and the parties' cross-motions for judgment on the record are **DENIED-AS-MOOT**.

---

[4] The disability rating is a percentage that represents, "as far as can practicably be determined, the average impairment in civilian occupational earning capacity resulting from certain diseases and injuries, and their residual conditions."  Department of Defense Instruction 1332.39 (November 1996).

**I.     Background[5]**

    **A.     Ms. Cooper's military service and medical evaluation**

Ms. Cooper was appointed as a reserve commissioned officer in the Army Nurse Corps, effective September 2, 2003. She served on active duty at the Walter Reed Army Medical Center for the duration of her four-year commitment. Ms. Cooper separated from active duty on September 7, 2007, having attained the rank of captain.

Ms. Cooper fell and injured her back sometime in early 2005. Following a "fit for duty" examination on November 9, 2005, the Army referred Ms. Cooper to an MEB, which was conducted on March 15, 2006. The MEB determined that Ms. Cooper suffered from medically unacceptable chronic low back pain and referred her to a PEB. On March 27, 2006, Ms. Cooper's Physical Evaluation Board Liaison Officer ("PEBLO")[6] counseled the plaintiff on the MEB's findings and conclusion that she be referred to a PEB.[7] This counseling included the requirements and procedures for

---

[5] The facts are undisputed unless otherwise noted, and are taken from the administrative record ("AR"), the parties' briefs, and associated attachments. Pursuant to RCFC 5.4(a)(3), with certain exceptions the plaintiff stipulated to the facts presented in the government's briefs. Pl.'s Cross-Mot. 2. The government expressly reserved the right to dispute the plaintiff's factual allegations in the event that the court denied its first motion to dismiss. See Def.'s Mot. to Dismiss, ECF No. 16, at *3 n.2.

[6] A PEBLO is "responsible for counseling soldiers regarding their rights and privileges at each step of the evaluation." AR 19, 21-22; see also Army Reg. 635-40 ¶ 3-8.

[7] The court acknowledges that the record remains less than clear as to the precise chronology of events surrounding Ms. Cooper's MEB. The record is sufficient, however, for the court to conclude that Ms. Cooper's PEBLO, Mr. Larry Gies, counseled Ms. Cooper as to the MEB's findings on March 27, 2006. Mr. Gies attested to providing such counseling, which is also documented in the Medical Evaluation Board Internal Tracking Tool. Although the plaintiff has contested the appropriateness of the ABCMR's reliance on Mr. Gies' declaration, Ms. Cooper has never actually challenged that declaration's accuracy.

4

appealing the MEB decision, as well as for requesting a continuation on active duty should the PEB find her to be unfit. On April 5, 2006, the plaintiff filed an appeal disputing the MEB's recommendation that she be referred to a PEB. Id.

The Army reevaluated Ms. Cooper in response to her appeal on April 19, 2006. After the plaintiff reported improvement as a result of new medical treatments, the evaluating physician recommended that her MEB be cancelled and that she be returned to duty with the limitation that she be afforded an alternate Army Physical Fitness Test ("APFT").[8] Consistent with this recommendation, the plaintiff's MEB was terminated. See AR 23; Def.'s Reply App. at 7.

On November 30, 2006, Ms. Cooper prepared and signed a "Pre-separation Counseling Checklist for Active Component Service Members," in which she noted that her separation was voluntary and listed September 9, 2007 as her anticipated separation date. Two weeks later Ms. Cooper completed a "Reproductive Health History" form in which she indicated to the Army that she was pregnant.

In August 2007 Ms. Cooper underwent a separation medical examination. Ms. Cooper indicated that she still suffered from chronic back pain, which limited her ability to work in her primary medical specialty. The examining physician recorded that Ms. Cooper suffered from "[c]hronic lower back pain–already undergone MEB + found unfit

---

[8] Ms. Cooper's statements concerning her improved health are not inconsistent with other record evidence suggesting her physical ability to perform her duties between her April 19, 2006 medical evaluation and her separation from active duty on September 7, 2007. Ms. Cooper's 2006 and 2007 Officer Evaluation Reports ("OER") indicate that she maintained the appropriate level of physical fitness and military bearing—notwithstanding her exemption from Army weight control standards and her use of the APFT. AR 38-39, 44-45.

but allowed to finish commitment." Pl.'s Cross-Mot. App. Tab C.  The physician apparently did not recommend that an MEB be convened to address her back pain.  On September 7, 2007, Ms. Cooper fulfilled her four year commitment and was honorably discharged from active duty.

The day after separating from active duty, Ms. Cooper began serving as the Head Nurse of a pediatric unit as a reserve commissioned officer in the USAR.  Although Ms. Cooper performed substantially similar duties as she had while serving on active duty, she did not work full time at a hospital.  See Oral Argument Tr.13:12-14, September 17, 2013.  On October 17, 2007, Ms. Cooper received an "Individual Sick Slip," DD Form 689, stating, "Soldier currently evaluated by MEB awaiting results of VA compensation.  Soldier new to unit and needs documentation for fitness of duty for Reserves."  AR 289.

The Army convened another MEB for Ms. Cooper on March 1, 2012.[9]  On August 8, 2012, an informal PEB convened and found that the plaintiff could not sit or stand for more than 30 minutes or lift more than 20 pounds because of mechanical low back pain.  It found that her condition prohibited all standard and alternate APFT events, and recommended that Ms. Cooper be permanently retired and that her combined disabilities be rated at 50%.  The Secretary of the Army approved these findings and on January 3, 2013, the plaintiff was discharged and placed on the retired list.  See Pl.'s Cross-Mot. App. Tab B.

---

[9] The record does not clearly indicate whether or not Ms. Cooper's 2012 MEB was connected to her 2007 DD Form 689.  This information is not relevant, however, to the court's jurisdictional analysis.

6

B.     **The instant litigation**

Ms. Cooper filed her complaint in this court on May 25, 2011—prior to the convening of her 2012 MEB—in which she claimed that the Army's alleged errors rendered "her discharge [from active duty] wrongful and entitle[d] her to basic pay and allowances under [the Military Pay Act,] 37 U.S.C. § 204." Compl. ¶ 15. Specifically, Ms. Cooper claimed that the Army had acted contrary to its regulations by (1) terminating her 2006 MEB proceeding, (2) failing to provide her with mandatory separation counseling, and (3) not convening a new MEB proceeding prior to separating her from active duty. Her complaint further alleged that her separation had been involuntary, and that she had requested to continue on active duty.

On December 20, 2012, the government moved to dismiss her complaint for lack of jurisdiction on two grounds. First, the government contended that, under Tippett v. United States, 185 F.3d 1250 (1999), the voluntary nature of Ms. Cooper's separation divested the court of jurisdiction to hear a claim for wrongful separation. Second, the government suggested that Ms. Cooper's suit was actually one for disability pay, which necessitated a final administrative decision regarding her disability claim prior to filing in federal court. In response, the plaintiff questioned the continued force of Tippett, and strenuously denied that Ms. Cooper was seeking retroactive disability retirement pay under 10 U.S.C. § 1201.[10]

---

[10] In opposing the government's motion to dismiss, the plaintiff contended:

> The defendant argues that we are asking this Court to rule that Ms. Cooper was disabled. . . . This is not true. . . . The defendant seems to misunderstand that

After briefing on the government's motion to dismiss for lack of jurisdiction, the government filed an unopposed motion to remand the case to the ABCMR, which the court granted on April 9, 2012. Order, ECF No. 23. The remand order, which centered on the propriety of Ms. Cooper's discharge, stated:

> The ABCMR is to determine the circumstances of the termination of Ms. Cooper's medical disability evaluation and whether she was properly separated from active duty at the end of her four-year commitment. Further, the review will enable the ABCMR to determine whether Ms. Cooper's separation was voluntary. The Board may make findings as respects the merits of this case.

Id.

The ABCMR issued its decision on August 7, 2012. After reviewing the evidence before it, the ABCMR concluded that Ms. Cooper "both voluntarily submitted a request for resignation and was properly separated." AR 16. Specifically, the ABCMR concluded that Ms. Cooper was referred first to an MEB in 2006 based on her inability to overcome her chronic back pain. The board also found that Ms. Cooper had appealed the MEB's findings, which led to her subsequent medical reexamination and the eventual termination of her MEB. The ABCMR also concluded that although Ms. Cooper might have submitted a request to continue on active duty during her 2006 MEB, that this

---

> while the basis of Ms. Cooper's required retention on active duty was a result of her disabilities failing retention standards, the complaint seeks active duty pay and allowances required to be paid members under 37 U.S.C. § 204. . . . Nowhere in the complaint does Ms. Cooper claim entitlement to disability retirement pay under 10 U.S.C. [§] 1201 et. seq.

Pl.'s Resp. to Def.'s Mot. to Dismiss, ECF No. 17, at *13 (January 21, 2012) (citations omitted).

8

request "was rendered meaningless . . . when [Ms. Cooper's] condition improved and her MEB was terminated." AR 15.

Following the ABCMR's decision on remand, the court received additional briefing, which was completed on August 23, 2013.[11]  Oral argument was heard on September 17, 2013.  During oral argument, counsel for the plaintiff indicated that the plaintiff was withdrawing her request for reinstatement to active duty with back pay, and that she instead wanted retroactive disability pay from the date of her separation in 2007 until January 2013.  Counsel for the plaintiff addressed the nature of Ms. Cooper's claim as follows:

> COURT:  Now, you have withdrawn your request for reinstatement.  Tell me what it is that you think your client should be entitled to at this point.
>
> MR. PERRY:  Yes, Your Honor.  And along the lines of what [counsel for the government] stated in <u>Barnick</u>, the remedy being the entitlement to wrongfully withheld disability pay, that's essentially the breadth of her entitlement . . . .[12]

---

[11] On March 14, 2013, the plaintiff withdrew her claim for reinstatement, but maintained her claim for back pay through the effective date of her discharge—January 3, 2013.  <u>See</u> Pl.'s Resp. and Cross-Mot. 3, ECF No. 38.

[12] Prior to this exchange with the court, counsel for the government had stated:

> <u>Barnick</u> has held that the constructive service doctrine does not apply when a plaintiff claims that she should have been retained on active duty merely for disability evaluation.  <u>Barnick</u> says that, the Federal Circuit case.  Also, <u>Williams</u>, this court's case, 2011, says that where a service member concedes . . . that she wasn't fit . . . for duty, but requests reinstatement for the purposes of contesting a disability rating, the appropriate remedy is not application of the constructive service doctrine, but rather a retroactive disability determination and payment of any wrongfully denied disability benefits.  In other words, [Ms. Cooper] can't get active duty pay no matter what.

Oral Argument Tr. 24:5-18, September 17, 2013.

Oral Argument Tr. 25:22-25 to Tr. 26:1-8, September 17, 2013.

## II. DISCUSSION

### A. Standard of review for RCFC 12(b)(1) motion to dismiss for lack of jurisdiction[13]

The Tucker Act provides this court with jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a) (2012). However, because it does not create a substantive right enforceable against the United States, a plaintiff cannot rely on the Tucker Act alone. United States v. Testan, 424 U.S. 392, 398 (1976). Rather, the plaintiff must establish that her case fits within the scope of some independent money-mandating source. See Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003).

### B. The court lacks jurisdiction over the plaintiff's claim for retroactive disability retirement pay because there has not been a final determination denying the plaintiff's claim

As discussed above, it is now clear that the plaintiff is seeking retroactive disability retirement pay from the date when she was separated from active duty (September 7, 2007) through the date when she was medically retired from the USAR with a 50% rating (January 3, 2013). See Oral Argument Tr. 26:1-8, September 17, 2013. In its initial briefing, the government argued that the plaintiff appeared to be

---

[13] Although the government has not expressly renewed its RCFC 12(b)(1) motion following the decision of the ABCMR, this court has an independent duty to address its jurisdiction. See Holmes v. United States, 657 F.3d 1303, 1311 (Fed. Cir. 2011).

making a claim for disability pay, and on that basis challenged the court's jurisdiction on the ground that Ms. Cooper had not yet petitioned a competent military board for such relief. The government contended that the plaintiff could not make a claim for disability pay stemming from the date of her discharge without an Army decision denying her request.

The court agrees with the government that because Ms. Cooper presently seeks disability pay dating from her discharge, rather than back pay, Ms. Cooper's complaint must be dismissed on the ground that she failed to first seek such relief from a competent military board before filing suit in this court. In Chambers v. United States, the Federal Circuit explained that in contrast to claims for back pay, in which a service member may choose to file in this court without having first sought administrative relief, the rule for disability retirement pay is different. Chambers v. United States, 417 F.3d 1218, 1224-25 (Fed. Cir. 2005). Before seeking disability pay, the Circuit explained, a service member must first demonstrate that the claim for disability pay was heard by a competent military board, or show that the military upon request refused to consider the claim. See id. at 1224. This distinction, the Federal Circuit stated, is due to the fact that 10 U.S.C. § 1201 expressly entrusts to the military boards "'the task of determining whether a serviceman should be retired for disability . . . .'" Id. (quoting Friedman v. United States, 310 F.2d 381, 389 (Ct. Cl. 1962)). As such, the Federal Circuit has made clear that "the Court of Federal Claims has no jurisdiction over disability retirement claims until a military board evaluates a service member's entitlement to such retirement in the first instance." Id. at 1225.

Here it is undisputed that Ms. Cooper never sought disability pay from a competent military board for the period beginning with her 2007 separation from active duty. Ms. Cooper's initial claim for back pay, which was based on her allegedly wrongful discharge, was presented to the ABCMR following this court's remand. The ABCMR did not, however, consider Ms. Cooper's eligibility for disability pay. Rather, the ABCMR concluded that (1) the Army had not improperly terminated Ms. Cooper's 2006 MEB, (2) Ms. Cooper's separation had been voluntary, and (3) the Army had properly separated Ms. Cooper from active duty. Although this court might have had jurisdiction if Ms. Cooper had demonstrated that, at the time of her discharge, she had sought and been denied consideration of a disability claim by an appropriate board, Chambers, 417 F.3d at 1225, she has not made—nor can she make—that showing.[14] Thus, there has not been any decision by a competent military board regarding Ms. Cooper's eligibility for retroactive disability pay from the date of her discharge until January 3, 2013.

Absent evidence of a competent board ruling on her claim for retroactive disability pay dating from her date of discharge, there is nothing for the court to review. Under Chambers, this court lacks subject-matter jurisdiction over Ms. Cooper's claim for disability pay. Id.

---

[14] There is no evidence to suggest that the Informal PEB that ruled on the plaintiff's disability claim in 2012 considered her claim for disability pay dating from her discharge in 2007. During oral argument, the plaintiff stated that PEBs "are not currently entertaining issues about retroactivity." See Oral Argument Tr. 33:23-35, 34:1-2. The plaintiff will need to make an appropriate claim before a competent Army board if she wishes to pursue her claim for retroactive disability pay.

### III. CONCLUSION

For these reasons, Ms. Cooper's claim for retroactive disability pay—her only claim before this court—must be dismissed without prejudice. The government's motion to dismiss under RCFC 12(b)(1) for lack of jurisdiction is therefore **GRANTED**. The government's RCFC 12(b)(6) motion to dismiss for failure to state a claim and the parties' RCFC 52.1 motion for judgment upon the administrative record are **DENIED-AS-MOOT**. The Clerk is directed to enter judgment accordingly. Each party shall bear its own costs.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge